BENJAMIN PORTER AND JESSE HURD v. MARY M. NOYES, ZENAS C. ELDRED, WILLIAM RANDOLPH AND THE MICHIGAN COAL CO.

*Re-lease of abandoned premises—Parties—Purchase of litigious titles.*

Leases of coal mining lands, for terms of 25 years with the privilege of renewal, were given in 1857 and 1858, but the lessees did not go upon the lands and ceased to pay rent in 1871, apparently thinking that the mines were not worth working. The owners regarding the leases as abandoned, no payments having been tendered for several years, did not bring suit for the rent but let the lands again to other persons at a higher rental. *Held*, on an injunction bill brought by the assignees of the original lease to establish their own title and restrain the later lessees from mining the lands, (1) that the owners had a right to regard the abandonment as final and to re-let the premises; and (2) that the owners were necessary parties to a bill intended to destroy securities under which they were entitled to increased revenues, and should have been impleaded as defendants.

Equity does not favor the purchase of litigious titles or of stale demands revived after they were naturally regarded as abandoned.

Appeal from Jackson. Submitted Oct. 6–7. Decided Oct. 12.

INJUNCTION. Complainants appeal. Dismissal affirmed.

*Gibson, Parkinson & Ashley* and *E. Peck* for complainants. Where a grant of the right to remove coal or minerals gives the right to the mineral it carries the title thereto: *Harlan v. Lehigh Coal Co.* 35 Penn. St. 287; *Tiley v. Moyers* 43 Penn. St. 404; *Chicago Co. v. United States Co.* 57 Penn. St. 83; title to a mine and to the land above it may be in different persons: Bingham Sales 244; *Muskett v. Hill* 5 Bing. N. C. 694; *Grove v. Hodges* 55 Penn. St. 504; *Caldwell v. Fulton* 31 Penn. St. 475; a mineral lease is a sale of a portion of the land: *Gowan v. Christie* 5 Eng. 114; where mines have been conveyed apart from the land above them the maxim that possession of the surface carries title to all the land below does not apply: *Caldwell v. Copeland* 37 Penn. St. 427; *Armstrong v. Caldwell* 53 Penn. St. 284; actual possession of a mining claim is not necessary to give a right of action for its invasion: *Attwood v. Fricot* 17 Cal. 37; *English v. Johnson* id. 108; nor is even a formal location of the claim needed: *Penn. Min. Co. v. Owens* 15 Cal. 135; injunction lies to restrain the removal of coal from a mine: *West Point Iron Co. v. Reymert* 45 N. Y. 703; *Moore v. Ferrell* 1 Ga. 7; *Munson v. Tryon* 6 Phil. 395; *Emma Mine Case* 3 Leg. Gaz. 81; *Boyle v. Laird* 2 Wis. 431; *Merced Mining Co. v. Fremont* 7 Cal. 317; *Chapman v. Toy Long* 4 Saw. 33; non-joinder of one whose absence does not prejudice the rights of parties before the court is not a fatal objection on review: Story's Eq. Pl. §§ 74, 77, 135; see also *Crooks v. Whitford* 40 Mich. 599; *Donalds v. Plumb* 8 Conn. 447; *Cutler v. Tuttle* 19 N. J. Eq. 558; *Sweet v. Parker* 22 N. J. Eq. 455; *Wood v. Stover* 28 N. J. Eq. 249; non-user of a mine does not imply its abandonment: *Seaman v. Vawdrey* 16 Ves. 390; Bing. Sales 288; nor give the right to them to the owner of the land above: Bainbridge's Mines 8: abandonment is a question of intention: *Richardson v. McNulty* 24 Cal. 339; *Harkness v. Burton* 39 Ia. 101; *Waring v. Crow* 11 Cal. 366; the doctrine only applies where there has been naked possession without title: *Ferris v. Coover* 10 Cal. 589; and neglecting to work a mine does not estop one from denying abandonment: *Marquart v. Bradford* 43 Cal. 526.

*Thomas A. Wilson* and *Austin Blair* for defendants. The lessors of a mine should be made parties defendant to a bill to enjoin the lessees from working it: 1 Dan. Ch. Pr. 184–5, 198, 202; *Howell v. Merrill* 30 Mich. 282; *Salisbury v. Miller* 14 Mich. 160; *Lawrence v. Jarvis* 36 Mich. 281; *Westcott v. Minnesota Min. Co.* 23 Mich. 145; *Austin v. Curtis* 41 Mich. 723; the lessee of land containing an open mine has a right to work it: Wood's L. & T. 703; Taylor's L. & T. § 346; *Clegg v. Rowland* L. R. 2 Eq. 160; *Saunders's Case* 5 Co. 22; *Owings v. Emery* 6 Gill 260; if a lessee enters and abandons possession the lessor may re-enter and terminate the lease: Wood's L. & T. 925; *Schuisler v. Ames* 16 Ala. 73; *State v. McClay* 1 Harr. (Del.) 520; *Mackellar v. Sigler* 7 Alb. L. J. 316.

CAMPBELL, J. Defendants are lessees under certain leases of coal-mining lands near the city of Jackson, granted to them in the early part of the year 1879 by the land-owners severally. Complainants are assignees of leases of the same lands for similar purposes, made in 1857 and 1858, by the persons then owning the property, to the Detroit & Jackson Coal & Mining Company.

These earlier leases were for terms of 25 years and some of them were renewable for a second term. They were not exactly alike, but all provided for a preliminary testing of the lands within a year, and all provided for a rent of ten cents per ton on all coal raised, and the same sum for a certain number of tons per year, as a minimum, whether raised or not.

The Detroit & Jackson Coal Company continued to mine on some other lands for several years, and for a portion of the time sub-let to other persons, and upon the lands actually mined the rents seem to have been kept up. None of the lands involved in this suit were ever mined at all, but annual payments were made of the amount stipulated until 1871. Since that time no rents have been paid, and nothing has been done whatever.

In February and March, 1879, the land-owners, regarding these leases as abandoned, made the new arrangements with

the defendants, who were proceeding to commence mining. The rents under these new leases are much higher than those under the first.

In April, 1879, the complainants obtained a sublease from the Detroit & Jackson Coal & Mining Company of their whole property at a rent of nineteen cents a ton.

All of the parties protected themselves against the risks and results of litigation, and all of them knew or had means of knowing the facts.

This bill was filed in August, 1879, to restrain the defendants from mining, and to obtain a decree asserting complainants' title. It avers the performance by the original lessee of all covenants in one of the leases except as excused, and as to the others that nothing has been done to forfeit or terminate the lessee's rights.

The defence is chiefly rested on abandonment—so far as the merits are concerned; but it is also objected that the necessary parties are not before the court.

As the lessees never entered upon the leased land, and never did any work on or under the surface, it is manifest that the rights of the parties must be governed by the contracts, and acts or omissions under them. Whatever may be the technical questions concerning forfeiture, there can be no doubt of the equitable duty of the lessees to pay their rent. There is in our opinion, under the testimony, no reasonable question concerning the intentional abandonment of these leases, for the reason that they were not regarded as worth working then, whatever may have been their possible speculative value in the future. And we think the testimony preponderates in favor of a communication of this design to the lessors. No payments were made or tendered, and no suit was brought to collect the rent.

The change in the condition and prospects of mining, and the new arrangements made with the defendants, appear to be the real cause of the renewed interest of the complainants and their assignors. We do not think that they can complain that their ultimate lessors acted as they were justified in supposing they had a right to act. They were not

bound to keep their property unemployed, on any such uncertainties, and they had a right to regard the abandonment as final. Neither do we think equity should favor the purchase of litigious titles. Formerly such sales were invalid, and if they are valid now, they are not especially meritorious. The demand in controversy is a stale demand, revived after it was naturally regarded as dead, and such demands are not entitled of right to equitable enforcement. But we do not propose to discuss the legal possibilities.

Had the case been otherwise regular, the owners of the land are necessary parties to a bill intended to destroy securities under which they are entitled to increased revenues.

The bill was properly dimissed, and the decree must be affirmed with costs.

The other Justices concurred.